UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 JAN 12  P 4: 07
U.S. DISTRICT COURT
HARTFORD, CT.

DANA MOZELL          :
                     :      PRISONER
    v.               :   CASE NO. 3:02CV1035(DFM)
                     :
JOHN ARMSTRONG, et al.[1] :

RULING AND ORDER

Plaintiff Dana Mozell ("Mozell") is an inmate currently confined at the Enfield Correctional Institution in Enfield, Connecticut. He brings this civil rights action pro se pursuant to 28 U.S.C. § 1915. Mozell alleges that, while he was confined at the Cheshire Correctional Institution in Cheshire, Connecticut, Correctional Officers Melewski and Vernon ("the defendants") failed to protect him from an assault in the shower. The defendants have moved to dismiss this case on various grounds. For the reasons that follow, the defendants' motion is granted in part and denied in part without prejudice.

I.  Standard of Review

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most

---

[1] The original complaint named as defendants Commissioner John Armstrong and Warden Hector Rodriguez. On August 7, 2002, the court ordered plaintiff to file an amended complaint demonstrating that he exhausted his administrative remedies and alleging facts demonstrating the personal involvement of each defendant in the incident giving rise to his claims. The amended complaint, filed September 30, 2002, names only Correctional Officers Melewski and Vernon as defendants. Thus, the court considered all claims against defendants Armstrong and Rodriguez to be withdrawn.

favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Thomas v. City of N.Y., 143 F.3d 31, 37 (2d Cir. 1998). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996) (quoting Grant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotations omitted). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993). The Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992).

II. Facts

The court accepts as true the following facts, which are taken from the amended complaint and attached exhibits.

On August 24, 2001, Mozell was attacked while he was in a

"secure" shower at Cheshire Correctional Institution.[2] The defendants were present while another inmate cut and slashed Mozell but failed to physically intervene. Instead, they looked on and only "yelled" and "screamed." Following the attack, Mozell was taken to the University of Connecticut Medical Center where he received thirty-eight stitches.

III. Discussion

The only claim included in the amended complaint is that the defendants failed to protect Mozell from assault by another inmate.[3] The defendants raise four grounds in support of their motion to dismiss: (1) Mozell fails to state a claim for deliberate indifference to his safety; (2) Mozell did not exhaust his administrative remedies before filing this action; (3) Mozell fails to allege the personal involvement of the defendants in the incident giving rise to his claim; and (4) the defendants are

---

[2] Mozell also alleges in the amended complaint that he was returning from a work assignment. Mozell could not be both in the shower and returning to his cell from a work assignment. To resolve this inconsistency, the court notes that Mozell states in both the original and amended complaints that he was in the shower, but only states he was returning from a work assignment in the amended complaint. Thus, the court assumes that the attack is alleged to have occurred in the shower.

[3] Mozell attaches to his amended complaint various medical records and argues in opposition to the motion that various correctional officers retaliated against him for threatening to file this action and placed him in segregation following the attack. Any claims regarding medical care, placement in segregation or retaliation are not included in the amended complaint and are not a part of this action. See Wright v. Ernst & Young, LLP, 152 F.3d 169, 178 (2d Cir. 1998) (plaintiff may not amend his complaint by memorandum).

3

protected by qualified immunity.

   A. <u>Failure to State a Claim</u>

   The defendants first argue that Mozell fails to allege facts stating a claim for deliberate indifference to his safety.

   The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty on prison officials to "take reasonable measures to guarantee safety of the inmates." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (citing <u>Hudson v. Palmer</u>, 468 U.S. 517, 526- 27 (1984)). This duty includes protecting inmates from harm at the hands of other inmates. <u>See id.</u>; <u>Fischl v. Armitage</u>, 128 F.3d 50, 55 (2d Cir. 1997). Although prison conditions may be harsh, being violently assaulted in prison simply is not "part of the penalty that criminal offenders pay for their offenses against society." <u>Farmer</u>, 511 U.S. at 833.

   Not every assault by a fellow prisoner, however, rises to the level of a constitutional violation. <u>See id.</u> at 834. To establish a constitutional violation, a prisoner must show that he was "incarcerated under conditions posing a substantial risk of serious harm" <u>id.</u> at 827, and that the prison official showed "deliberate indifference" to the prisoner's health or safety. Deliberate indifference exists where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837. <u>See Hayes v.</u>

4

New York City Dep't Of Corrections, 84 F.3d 614, 620 (2d Cir. 1996) (holding that prison official possesses culpable intent to support a claim of deliberate indifference where he "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.").

Regarding the objective component of the deliberate indifference test, courts have held that an inmate attacked by another inmate satisfies the test. See, e.g., King v. Department of Corrections, No. 95 Civ. 3057(JGK), 1998 WL 67669, at *5 (S.D.N.Y. Feb. 18, 1998) (holding that inmate attacked by another inmate who received 13 stitches for cuts to the face, neck, and shoulder fulfilled objective requirement of the Eighth Amendment); Knowles v. New York City Dep't of Corrections, 904 F. Supp. 217, 221 (S.D.N.Y. 1995) (holding that inmate assaulted by a fellow inmate using a sharp object to cut the plaintiff's face and who subsequently received sixty stitches, easily met the objective requirement of the Eighth Amendment).

Here, Mozell was attacked by another inmate and received thirty-eight stitches. The defendants do not argue that Mozell fails to satisfy the objective component of the deliberate indifference test. Thus, for the purposes of deciding this motion only, the court assumes that Mozell was confined under conditions posing a substantial risk of serious harm.

The controversy here rests with the subjective prong of the

deliberate indifference test. The defendants base their argument on the fact that courts routinely deny failure to protect claims based on a surprise attack or the simple fact that two inmates engaged in an argument. See Zimmerman v. Macomber, No. 95 CIV 882(DAB), 2001 WL 946383, at *5 (S.D.N.Y. Aug. 21, 2001)(citing cases). They argue that they had no prior knowledge that Mozell was in danger or had been threatened.

The court construes Mozell's failure to protect claim also to be based on his allegation that once he was attacked, the defendants "did nothing but yell and scream" instead of physically intervening to stop the attack. If Mozell were able to present evidence to support this allegation, he might be able to establish that the defendants were aware of and disregarded a serious risk to Mozell's safety. Thus, Mozell states a claim for failure to protect based upon the defendants' alleged failure to stop the attack.

In addition to alleging that he was attacked while in the shower, Mozell states that the defendants were following warden's policy by permitting other inmates to be out of their cells while Mozell was returning from his work assignment. Because the court has construed the complaint to allege that Mozell was attacked while he was in the shower, and not while he was returning from a work assignment, the court considers this statement to be a second failure to protect claim asserted against the defendants.

The defendants argue that Mozell suffered no injury as a

result of their compliance with institutional policy. Mozell has not identified any injury suffered from these actions either in the original or amended complaint or in his opposition to the motion to dismiss. Thus, this allegation fails to state a claim against the defendants. The defendants' motion to dismiss is granted as to any failure to protect claim premised on the allegation that the defendants complied with institutional policy.

B.   Exhaustion of Administrative Remedies

The defendants next argue that Mozell failed to timely and completely exhaust his administrative remedies before commencing this action. In response, Mozell argues that correctional staff interfered with his ability to exhaust his administrative remedies.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires an inmate to exhaust "administrative remedies as are available" before bringing an "action . . . with respect to prison conditions." The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, see Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 992 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process. See Booth v. Churner, 532 U.S. 731, 741 (2001).

The statute expressly states that inmates must exhaust all

7

available administrative remedies before filing suit. See <u>Neal v. Goord</u>, 267 F.3d 116, 122 (2d Cir. 2001). Thus, any attempt to exhaust administrative remedies after the case was filed is ineffective to satisfy the exhaustion requirement. In addition, "[p]rison officials are entitled to require strict compliance with an existing grievance procedure." <u>Hemphill v. New York</u>, 198 F. Supp. 2d 546, 549 (S.D.N.Y. 2002). See <u>Byas v. New York</u>, No. 99 CIV. 1673 (NRB), 2002 WL 1586963, at *2 (S.D.N.Y. July 17, 2002) ("Permitting a plaintiff to bypass the codified grievance procedure by sending letters directly to the facility's superintendent would undermine the efficiency and the effectiveness that the prison grievance program is intended to achieve.")

The administrative remedies for the Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Grievances. During the relevant time period, section 6(A) provided that the following matters were grievable:

1. The interpretation and application of policies, rules and procedures of the unit, division and Department.
2. The existence or substance of policies, rules and procedure of the unit, division and Department . . . .
3. Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.
4. Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure.
5. Any other matter relating to access to privileges, programs and services, conditions of care or supervision and

8

>           living unit conditions within the
>           authority of the Department of
>           Correction, to include rights under the
>           Americans with Disabilities Act, except
>           as noted herein.
>      6.   Property loss or damage.

Mozell's failure to protect claim is included within the list of grievable matters at items 3 and 5. Thus, Mozell was required to fully exhaust his administrative remedies before he filed this action.

The Second Circuit considers the failure to exhaust administrative remedies an affirmative defense. "A defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements [that plaintiff first exhaust all administrative remedies]." Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999). By characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss. Rather, the defendants must present proof of non-exhaustion. See also Reyes v. Punzal, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002) ("in the Second Circuit, failure to comply with the PLRA's exhaustion requirement is viewed as an affirmative defense . . . and . . . defendant bears the burden of proving plaintiff's failure to comply with the exhaustion requirement")(citations omitted); Hallett v. New York State Dep't of Correctional Serv., 109 F. Supp. 2d 190, 196-97 (S.D.N.Y. 2000) (same). But see Snider v. Melindez, 199 F.3d 108, 111-14 (2d Cir. 1999) (creating

an exception to this rule by permitting the court to dismiss a complaint sua sponte, after notice to the plaintiff and an opportunity to be heard, where the plaintiff's failure to exhaust administrative remedies under the PLRA is "readily apparent," or "unambiguously established in the record").

Mozell received notice of the exhaustion requirement in the court's August 2002 order. In response to that order he filed his amended complaint. The only reference to exhaustion of administrative remedies in the amended complaint is the following: "letters to an from Ilap and my medical file to show I exhausted my remedies." There are no claims of improper medical care in this case. Thus, Mozell's medical file is irrelevant to the exhaustion inquiry. In addition, a September 3, 2002 letter from Inmates' Legal Assistance Program informs Mozell that he must file institutional grievances to exhaust his administrative remedies.

In his memorandum in opposition to the motion to dismiss, Mozell states that he was ignored and "had different games played on him" by correctional staff members when he tried to exhaust his administrative remedies. (Pl.'s Mem. Opp'n at 2.) In addition, he states that "his Grievance Forms had a way of never reaching their destination." (Pl.'s Mem. Opp'n at 8.)

The court construes these statements as an argument that Mozell's administrative remedies through the inmate grievance process were unavailable because of the actions of correctional

staff. Because resolution of this claim requires review of information not contained in the amended complaint, the court cannot resolve this issue on a motion to dismiss. Thus, the motion to dismiss is denied without prejudice on the ground that Mozell failed to exhaust his administrative remedies before filing this action. The defendants may reassert this argument in a motion for summary judgment or at trial.

C. Personal Involvement

The defendants argue that Mozell fails to allege facts demonstrating their personal involvement in the incident.

It is settled law in this circuit that in a civil rights action for monetary damages against a defendant in his individual capacity, a plaintiff must demonstrate the defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

Mozell alleges that the defendants failed to protect him from assault by another inmate when they witnessed the assault but did not physically intervene to stop it. This allegation clearly demonstrates that the defendants were involved in this incident. The defendants' motion to dismiss is denied on this ground.

D. Qualified Immunity

Finally, the defendants argue that the complaint should be dismissed because they are protected by qualified immunity.

The doctrine of qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Rodriquez v. Phillips, 66 F.3d 470, 475 (2d Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine whether qualified immunity is warranted, the court first must address the question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).

> [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.  This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition.

Id.

The court has determined above that Mozell's allegation that the defendants watched and did not intervene to stop the attack states a claim upon which relief may be granted.  In addition, the right of an inmate to be free from assault by another inmate was clearly established at the time of the incident.  See, e.g., Hayes v. New York City Dep't Of Correction, 84 F.3d 614, 620 (2d Cir. 1996) (holding that prison official possessed requisite culpable intent to satisfy subjective prong of deliberate

indifference standard where he knew that an inmate faces a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate the harm). Accordingly, defendants' motion to dismiss on the ground that they are protected by qualified immunity is denied.

IV. Conclusion

The defendants' Motion to Dismiss [**doc. #16**] is **GRANTED** as to any failure to protect claim premised on the institutional practice of permitting more that one inmate to be out of his cell at a time and **DENIED** without prejudice in all other respects. The parties are directed to conclude discovery in this case within **90** days from the date of this order with any motions for summary judgment filed within **120** days from the date of this order.

This is **not** a recommended ruling. The parties have consented to the exercise of jurisdiction by a magistrate judge and the case was transferred to the undersigned for all purposes including the entry of judgment on April 14, 2003. (See Doc. #12.)

SO ORDERED this 12th day of January, 2004, at Hartford, Connecticut.

DONNA F. MARTINEZ
UNITED STATES MAGISTRATE JUDGE

13