UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Dana Mozell | : | PRISONER. |
| | | 3:02CV1035(DFM) |
| v. | : | |
| John Armstrong, et al | : | August 19, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the two remaining defendants[1] in the above-captioned matter move for summary judgment in her favor as the plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

**Facts:**

The plaintiff alleges that he was involved in an altercation with another inmate on **August 24, 2001**. See Amended Complaint. He brings this lawsuit claiming that the defendants exhibited deliberate indifference by failing to protect him from assault by another inmate on that date

The defendants move for summary judgment on the basis of the plaintiff's failure to exhaust his administrative remedies as provided in State of Connecticut Department of Correction Administrative Directive 9.6.

The State of Connecticut Department of Correction (hereinafter "DOC") provides inmate housed within its correctional facilities a grievance procedure. **Exs. A, Administrative**

**Directive 9.6; B Administrative Directive 9.6 as previously effective.**  Inmates wishing to file a grievance can file a "Level 1" grievance, and, if unsatisfied with the response, can file a "Level 2" grievance.  **Exs. A; B.**  Access to the grievance procedure is limited only as a result of abuse of the Inmate Grievance Procedure.  **Exs. A; B.**  Since at least 1999, Department of Correction policy has required the following:

> 1.Grievance File.  A grievance file shall be maintained at each level for each grievance.  The grievance file shall include a copy of the grievance, each response, and any supporting documents submitted in support of the grievance, presented during investigation, or relied upon in the decision.
> 2. Grievance Log.  The Grievance Log, . . . shall be maintained at each level and shall include the name and number of the grievant, the dates of initial receipt and of the response at that level, a brief description of the problem and the disposition.

**Exs. A; B; C, Bartholomew Affidavit.**

A grievance regarding a failure by Correctional staff to protect an inmate from assault by another inmate is considered a line grievance.  **Ex. C**.

The grievance procedure at Cheshire in the year 2001 conformed strictly with Administrative Directive 9.6 as then in effect.  **Ex. C.**  Grievance forms were readily available to inmates.  **Ex. C**.  Completed grievance forms were placed personally by an inmate into a grievance box which was locked  The grievance box was located in the housing unit, and thus accessible to inmates.  **Ex. C**.

Staff other than grievance coordinators do not have access to the locked grievance box. The only persons who have access to the locked box are persons designated as a grievance coordinator or back-up grievance coordinator.  **Ex. C**.  At the time period in question, no Correctional Officers had access to the locked grievance box.  **Ex. C**.

---

[1]    The complaint initially named former Commissioner John Armstrong.  The operative complaint, however, lists only two defendants:  Correctional Officers Melewski and Vernon.

Every grievance put in a locked grievance box was logged, and included the date of the grievance, the name and inmate number of the grievant, the date of the response, and a brief description of the nature of the problem and the disposition. **Ex. C**. In addition, a file was opened for each grievance, and this file included any documents pertinent to the grievance or the investigation thereof. **Ex. C**. This system precluded individual staff members from impacting the grievance process. **Ex. C**. Inmates can ask their Correctional Counselors to make copies of their grievance forms if they want to maintain a record of whatever grievance has been filed. **Ex. C**.

The grievance system in effect at Cheshire both in 2001 and now is a three-tiered system. **Ex. C**. If an inmate does not receive a response to a Level 1 grievance, he can file a Level 2 grievance. **Ex. C**. Level 2 grievances are likewise confidential, and go to a different grievance coordinator, and are likewise logged. **Ex. C**. Level 2 grievances are logged separately by a Level 2 grievance reviewer in a separate building. **Ex. C**. Counselor Supervisor Bartholomew personally reviewed the log for Level 2 grievances filed at Cheshire for the year 2001 as well as early 2002 and the plaintiff in this matter never filed any Level 2 grievances during that time period regarding any issue at all. **Ex. C**.

Both the grievance files and the grievance logs were systematically maintained by the grievance coordinator, as per the directive. Grievance logs are retained as the official record and for data collection purposes. **Ex. C**.

Grievances are maintained for a minimum of five years.  **Ex. C.**  Captain Carlone has asked Cheshire's grievance coordinator to check for any documentation of a grievance filed by Inmate Mozell, and has been informed that Mozell never filed any grievance while at Cheshire.  **Ex. D, Carlone Affidavit.**

In this case, the plaintiff received notice of the exhaustion requirement in this Court's order dated August of 2002.  In response to that order, the plaintiff filed his Amended Complaint.  The only reference to the exhaustion requirement in the Amended Complaint is the following language:  "letters to an[d] from Ilap [Inmate's Legal Assistance to Prisoners] and my medical to show I exhausted my remedies."  The plaintiff attaches no grievances to his Amended Complaint.  There is a letter from ILAP to the plaintiff dated September 3, 2004 indicating that the plaintiff must file institutional grievances in order to exhaust his administrative remedies.

The defendants filed a Motion to Dismiss the plaintiff's Amended Complaint, in part as the plaintiff has not exhausted his administrative remedies.  In his response, the plaintiff did not allege that he filed institutional grievances and exhausted his administrative remedies.  Nor did he directly allege that he ever tried to file a grievance with regard to the incident that is the subject of this lawsuit.  Rather, the plaintiff alleged that he was "ignored" and that he "had different games played on him" by staff members.  Pl.'s Mem. Opp'n. at 2.  Again, without actually alleging that he grieved the incident that is the subject of this lawsuit, the plaintiff claimed that "his grievance forms had a way of never reaching their destination."  Pl.'s Mem. Opp'n at 8.

As the attached Affidavit of Counselor Supervisor Bartholomew makes clear, the responsibility is on the plaintiff to make sure that his grievance forms get into the grievance box

where they can be logged and responded to by the grievance coordinator.  If no response is received, an inmate can file a Level 2 grievance, which is responded to and logged separately. **Ex. C**.  In this case, there is no record of the plaintiff filing a grievance at any level.  **Exs**. **C; D.** The plaintiff's vague references to the contrary are unavailing.  The record is clear that the plaintiff never filed a grievance with regard to the incident that is the subject of this lawsuit, and the plaintiff himself does not dispute this.

**Argument:**

The Prison Litigation Reform Act provides:  "***No action shall be brought*** with respect to prison conditions under Section 1983 of this title, or any other Federal law, *by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."*  42 U.S.C. § 1997e(a) (2000) (emphasis added).  In 2001, the United States Supreme Court ruled that the Prison Litigation Reform Act exhaustion requirement does not depend on whether or not any given correctional system has administrative remedies in place that provide money damages.  *Booth v. Churner,* 532 U.S. 731 (2001).  In 2002, the United States Supreme Court held unanimously that the already unambiguous language of the Prison Litigation Reform Act requiring exhaustion "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (emphasis added).

As the Supreme Court did in *Porter*, this Court may take judicial notice of the State of Connecticut Department of Correction's Administrative Directive 9.6, entitled Inmate

5

Grievances.  *Id.* at 521.[2]  **Exs. A; B.**  The Administrative Directive sets forth a multi-level inmate grievance procedure.    The  Administrative  Directive  makes  clear  that,  under  certain circumstances, an inmate may file an "Emergency Grievance" which correctional officials must respond to within eight hours and follow up in writing within three business days.  **Exs. A; B.** In non-emergencies, an inmate may file a Level 1 grievance "within 30 days of the occurrence or discovery of the cause of the grievance."  **Exs. A; B.**  A Level 1 grievance must be responded to within 30 days.  **Exs**. **A; B**.  If the inmate does not receive a "timely response" to his grievance, he or she may appeal to Level 2.  *Id.*.  When the Department of Correction notifies an inmate it the disposition of a grievance, it provides directions for appealing to Level 2.  *Id.*  An inmate choosing to appeal has five calendar days in which to do so.  *Id.*.  Level 2 grievances which are not responded to are appealable as Level 3 grievances.  *Id.*

Importantly, Administrative Directive 9.6, in all its various editions, has required both that copies of inmate grievances and responses thereto be maintained and logged.  **Exs. A; B.**

In this case, the plaintiff did not even begin, let alone exhaust, the administrative remedies available to him through the State of Connecticut Department of Correction grievance procedure.  He did not even substantially comply, let alone fully comply with the grievance procedure.  He can provide this Court with no evidence that he filed both a Level 1 and a Level 2 grievance, thus exhausting the administrative remedies available to him.  Exhaustion

---

[2]      The federal Courts have frequently taken judicial notice of the State of Connecticut Department of Correction Administrative Directives.  *See, e.g., Nieves v. Palumbo*, No. 3:96CV1389(DJS)(TPS), Ruling on Motion to Dismiss, December 17, 1997, attached (taking judicial notice of the State of Connecticut Department of Correction Inmate Grievance Procedure in Administrative Directive 9.6)

encompasses all levels of the grievance procedure. *Bates v. Myers,* 3:02cv974(AVC)(TPS), Ruling, August 5, 2004, attached.

 The plaintiff's vague claims regarding grievances are insufficient to overcome the clear evidence that inmates were able to file grievances in a confidential manner and with two separate grievance coordinators with strict accounting responsibilities.

 As the plaintiff failed to file any grievance, and as a grievance is an administrative remedies that is available to inmates, this matter should be resolved in the defendants' favor on summary judgment. If this Court is not inclined to grant summary judgment in the defendant's favor, the defendant respectfully moves for a hearing on the issue of exhaustion, as other District Courts have done before an unnecessary trial on the merits. *See, e.g., Aponte v. Arrington,* Recommended Ruling, 3:99cv847(WWE), March 11, 2003, attached, Ruling adopted May 5, 2003.

DEFENDANT,
John Armstrong
RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:___/s/_____
Lynn D. Wittenbrink
Assistant Attorney General
Federal Bar No. ct08575
110 Sherman Street
Hartford, CT 06105
Telephone No. (860) 808-5450
Fax No. (860) 808-5450
lynn.wittenbrink@po.state.ct.us

## <u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing was sent by first-class mail to the following

on this 19th day of August, 2004, to:

Dana Mozell, Inmate No. 208420
Carl Robinson Correctional Institution
P.O. Box 1400
Enfield, CT 06083

_____/s/_____
Lynn D. Wittenbrink
Assistant Attorney General