UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Dana Mozell | : | PRISONER. |
| | | 3:02CV1035(DFM) |
| v. | : | |
| John Armstrong, et al | : | August 19, 2004 |

### RULE 9(c)1 STATEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION

1. The State of Connecticut Department of Correction (hereinafter "DOC") provides inmate housed within its correctional facilities a grievance procedure. **Exs. A, Administrative Directive 9.6; B Administrative Directive 9.6 as previously effective.**

2. . Inmates wishing to file a grievance can file a "Level 1" grievance, and, if unsatisfied with the response, can file a "Level 2" grievance. **Exs. A; B.** Access to the grievance procedure is limited only as a result of abuse of the Inmate Grievance Procedure. **Exs. A; B.**

3. . Since at least 1999, Department of Correction policy has required the following:

   1.<u>Grievance File.</u>  A grievance file shall be maintained at each level for each grievance.  The grievance file shall include a copy of the grievance, each response, and any supporting documents submitted in support of the grievance, presented during investigation, or relied upon in the decision.
   2. <u>Grievance Log.</u>  The Grievance Log, . . . shall be maintained at each level and shall include the name and number of the grievant, the dates of initial receipt and of the response at that level, a brief description of the problem and the disposition.

   **Exs. A; B; C, Bartholomew Affidavit.**

4. A grievance regarding a failure by Correctional staff to protect an inmate from assault by another inmate is considered a line grievance. **Ex. C**.

5. The grievance procedure at Cheshire in the year 2001 conformed strictly with Administrative Directive 9.6 as then in effect. **Ex. C.** Grievance forms were readily available to inmates. **Ex. C**. Completed grievance forms were placed personally by an inmate into a grievance box which was locked  The grievance box was located in the housing unit, and thus accessible to inmates. **Ex. C**.

6. Staff other than grievance coordinators do not have access to the locked grievance box. The only persons who have access to the locked box are persons designated as a grievance coordinator or back-up grievance coordinator. **Ex. C**. At the time period in question, no Correctional Officers had access to the locked grievance box. **Ex. C**.

7. Every grievance put in a locked grievance box was logged, and included the date of the grievance, the name and inmate number of the grievant, the date of the response, and a brief description of the nature of the problem and the disposition. **Ex. C**. In addition, a file was opened for each grievance, and this file included any documents pertinent to the grievance or the investigation thereof. **Ex. C**. This system precluded individual staff members from impacting the grievance process. **Ex. C**. Inmates can ask their Correctional Counselors to make copies of their grievance forms if they want to maintain a record of whatever grievance has been filed. **Ex. C.**

8. The grievance system in effect at Cheshire both in 2001 and now is a three-tiered system. **Ex. C**. If an inmate does not receive a response to a Level 1 grievance, he can file a Level 2 grievance. **Ex. C**. Level 2 grievances are likewise confidential, and go to a different grievance coordinator, and are likewise logged. **Ex. C**. Level 2 grievances are logged separately by a Level 2 grievance reviewer in a separate building. **Ex. C**.

9. Counselor Supervisor Bartholomew personally reviewed the log for Level 2 grievances filed at Cheshire for the year 2001 as well as early 2002 and the plaintiff in this matter never filed any Level 2 grievances during that time period regarding any issue at all. **Ex. C**.

10. Both the grievance files and the grievance logs were systematically maintained by the grievance coordinator, as per the directive. Grievance logs are retained as the official record and for data collection purposes. **Ex. C**.

11. Grievances are maintained for a minimum of five years. **Ex. C.** Captain Carlone has asked Cheshire's grievance coordinator to check for any documentation of a grievance filed by Inmate Mozell, and has been informed that Mozell never filed any grievance while at Cheshire. **Ex. D, Carlone Affidavit.**

12. As the attached Affidavit of Counselor Supervisor Bartholomew makes clear, the responsibility is on the plaintiff to make sure that his grievance forms get into the grievance box where they can be logged and responded to by the grievance coordinator. If no response is received, an inmate can file a Level 2 grievance, which is responded to and logged separately. **Ex. C**. In this case, there is no record of the plaintiff filing a grievance at any level. **Exs**. **C; D.**

DEFENDANT,
John Armstrong
RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:___/s/_____
Lynn D. Wittenbrink
Assistant Attorney General
Federal Bar No. ct08575
110 Sherman Street
Hartford, CT  06105
Telephone No.  (860) 808-5450
Fax No. (860) 808-5450
lynn.wittenbrink@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was sent by first-class mail to the following on this 19th day of August, 2004, to:

Dana Mozell, Inmate No. 208420
Carl Robinson Correctional Institution
P.O. Box 1400
Enfield, CT 06083

                    __/s/_____
                    Lynn D. Wittenbrink
                    Assistant Attorney General